OWNERS MANAGEMENT COMPANY, Appellant,

v.

MOORE et al., Appellees.

[Cite as *Owners Mgt. Co. v. Moore* (1996), 111 Ohio App.3d 820.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–259.

Decided June 21, 1996.

*Douglas A. Wilkins,* for appellant.

*Thomas P. Goodwin* and *Kaser Butt–Bhatti,* for appellees.

*Per Curiam.*

This is an appeal from a judgment of the Toledo Municipal Court. Appellant, Owners Management Company, is appealing the trial court's denial of its complaint in forcible entry and detainer against appellees, Doris Moore and Al Moore. For the reasons discussed below, we affirm the decision of the trial court.

The facts of this case are as follows. On May 2, 1990, Doris Moore entered into a lease agreement with Owners Management concerning the rental of an

apartment in the Greenview Garden Apartments, a federally subsidized housing complex. Al Moore, who was a minor at the time his mother entered into the lease agreement, was not named as a tenant, nor was he a signatory to the lease. However, he lived with his mother throughout the times in question.

Detective Larry Katafiasz, a police officer with the city of Toledo, testified as to the following events. On January 29, 1994, as part of a police investigation, a confidential informant made a controlled buy of crack cocaine from Al Moore. The sale of the illegal drugs took place in the hallway of the Moores' apartment building. On February 11, 1994, officers again utilized a confidential informant to make a controlled buy of crack cocaine from Al Moore on the premises of the apartment complex. These controlled buys made by the confidential informant were part of the initial investigative work by police officers. In order to arrest Al Moore, police planned a direct buy of illegal drugs from Al Moore by an undercover officer. On March 31, 1994, the confidential informant along with an undercover police officer arrived at the Moores' apartment building. The confidential informant went into the building and returned to the parking lot with Al Moore. The undercover police officer purchased crack cocaine from Al Moore while in the parking lot of the Moores' apartment building.

In contrast, Al Moore admitted that he was convicted of selling illegal drugs on March 31, 1994 but that the sale took place only in the parking lot of his mother's apartment complex. Al Moore denied having ever sold drugs in the apartment itself on that or any other date. Further, Doris Moore denied having any knowledge of illegal drug sales by her son.

Following the March 31, 1994 incident, Al Moore was arrested and eventually indicted for the March 31, 1994 sale of drugs. Subsequently, Al Moore pled guilty and was convicted of a single count of attempted aggravated drug trafficking stemming from the March 31, 1994 purchase of cocaine by the undercover police officer.

Nick Ewsuk, the regional property manager for Owners Management, became aware of Al Moore's conviction upon reading of it in the January 28, 1995 edition of The Blade. On February 28, 1995, Owners Management delivered a notice of termination of the lease to Doris and Al Moore. On April 10, 1995, Owners Management delivered a notice to leave the premises to the Moores. Both notices indicated the identical grounds for eviction as follows:

"For failure to comply with item[s] 13b and 13c of your lease by Al Moore being convicted of attempted aggravated trafficking of drugs on our property on 1–29–94 and 2–11–94."

On May 15, 1995, Owners Management filed a complaint in forcible entry and detainer seeking restitution and possession of the Moores' apartment. The

complaint alleged that the Moores had breached the terms of their lease agreement as follows:

"Defendants have breached the terms of said Lease in that *Defendants have failed to comply with items 13b and 13c of Lease. Defendant Al Moore was convicted of Attempted Aggravated Trafficking of Drugs on the Greenview Gardens property.* On the 28th day of February, 1995 the Plaintiff duly served upon the Defendant, as required by law, notice in writing terminating the Defendant's Lease as of March 31, 1995. A copy of the notice of termination of Lease is attached hereto as Exhibit 'C'." (Emphasis added.)

Subsequently, a hearing was held before a magistrate. At the conclusion of the hearing, the magistrate ordered the parties to submit posttrial briefs on the issue of whether Doris Moore could be evicted if she had no knowledge of Al Moore's sale of illegal drugs. After reviewing the posttrial briefs, the magistrate issued a report and recommendation finding that Owners Management had not established cause to evict Doris or Al Moore. On August 7, 1995, the trial court adopted the magistrate's report and recommendation and ordered judgment to be entered in favor of the Moores.

It is from that judgment that Owners Management raises the following four assignments of error:

"I. The lower court erred in finding that Al Moore was not obligated as a Section Eight tenant, and, in addition, erred in finding that Al Moore was not a tenant.

"II. Regardless of whether Al Moore was or was not a tenant, he was properly evicted pursuant to R.C. 1923.02(A)(5).

"III. The lower court abused its discretion and erred as a matter of law in denying Owners judgment for possession of 1171 Pinebrook Parkway, United 104, as against both Moores.

"IV. The lower court erred in finding that Al Moore could not be evicted for the reason that his notices misstated the dates of his drug sales, as they related to his drug conviction, and erred in finding that he could not be evicted based upon the drug transaction of March 30 or March 31, 1994, for the reason that the transaction is not referenced in the notices."

As the first assignment of error, Owners Management argues that the trial erred in finding that Al Moore was not a tenant and, therefore, that he was not bound by Paragraphs 13b and 13c of the May 2, 1990 lease agreement. Essentially, Owners Management argues that the trial court's finding was against the manifest weight of the evidence.

■ In determining whether a judgment is supported by the manifest weight of the evidence, this court is bound by the following standard of review:

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

Further, in reviewing the manifest weight of the evidence, this court is to presume the correctness of the findings of the trier-of-fact as follows:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal, supra,* 10 Ohio St.3d at 80, 10 OBR at 410, 461 N.E.2d at 1276.

■ In the present case, Paragraphs 13b and 13c of the lease agreement provide that "a tenant" will not:

"b.   use the unit for unlawful purposes;

"c.   engage in or permit unlawful activities in the unit, in the common areas or on the project grounds."

Doris Moore was the only signatory and, therefore, the only tenant under the lease agreement executed on May 2, 1990. Owners Management alleges that Al Moore executed a certification of tenant eligibility, a form required under federal subsidized housing law, upon reaching the age of majority on June 11, 1993, and that such certificate designated him as a tenant. However, the certification of eligibility, although attached to the complaint, was never introduced into evidence at trial. In fact, the magistrate specifically found that there was no testimony as to the certificate and, therefore, it would not be admitted as evidence. Thus, there was no evidence that Al Moore was a tenant as indicated under the terms of the May 2, 1990 lease agreement. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus ("[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings"). Therefore, the trial court's finding that Al Moore was not a tenant is not against the manifest weight of the evidence. Accordingly, the first assignment of error is found not well taken.

■ As the second assignment of error, Owners Management argues that if Al Moore was not a tenant to the lease agreement, he was properly evicted pursuant to R.C. 1923.02(A)(5). Specifically, Owners Management argues that Al Moore's

residence, as a nontenant in his mother's apartment, was unlawful and therefore grounds for eviction under the statute.

R.C. 1923.02(A)(5) provides that a person is subject to a forcible entry and detainer action if the person "is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them * * *." However, neither the notice of termination, the notice to leave nor the complaint alleges as grounds for Al Moore's eviction the fact that Moore was living in the apartment without any right to do so. Further, there was no argument made at the hearing as to Al Moore being unlawfully present in the apartment.

■ It is well-settled law that an appellate court will not entertain issues that were not raised in the trial court. See, *e.g.*, *Williams v. Jerry L. Kaltenbach Ent., Inc.* (1981), 2 Ohio App.3d 113, 115, 2 OBR 126, 128, 440 N.E.2d 1219, 1221–1222. The issue of whether Al Moore was unlawfully living in his mother's apartment is raised for the first time on appeal and will not be considered by this court. Accordingly, the second assignment of error is found not well taken.

As the third assignment of error, Owners Management argues that the trial court erred in failing to order the eviction of Doris and Al Moore.

■ Owners Management first argues that the trial court erred in failing to grant it repossession because both Doris Moore and Al Moore were in violation of R.C. 1923.02(A)(6).

R.C. 1923.02(A)(6)(a)(i) essentially provides that a landlord has grounds for repossession where the "tenant, any person in the tenant's household, or any person on the premises with the consent of the tenant" is involved in criminal activity involving a controlled substance. However, Owners Management did not raise the ground that Doris or Al Moore were in violation of R.C. 1923.02(A)(6) in the notice of termination, in the notice to leave the premises, in the complaint or during the hearing. It was consistently Owners Management's position that the grounds for seeking eviction of the Moores was for the Moores' violation of Paragraphs 13b and 13c of the lease agreement. The first and only time in the trial court that Owners Management ever mentioned R.C. 1923.02(A)(6) was the following reference, as an analogy, in its posttrial brief:

"By analogy, R.C. 1923.02(A)(6) gives the landlord the right in Ohio to evict if it 'has actual knowledge of or has reasonable cause to believe that the tenant, *any person in the tenant's household* * * * has or presently is engaged [in] * * * [conduct] which involves a controlled substance.' " (Emphasis *sic*.)

Even if this court were to consider this single reference sufficient to raise the issue of the Moores' compliance with R.C. 1923.02(A)(6)(a)(i), the Moores were not given proper notice as required under the May 2, 1990 lease agreement. The

lease agreement provides that the landlord shall provide a termination notice which "state[s] the grounds for termination *with enough detail* for the Tenant to prepare a defense * * *." (Emphasis added.) Further, the lease agreement provides that "if an eviction is initiated, *the Landlord agrees to rely only upon those grounds cited in the termination notice* * * *." (Emphasis added.) The Moores' alleged violation of R.C. 1923.02(A)(5) was raised, if at all, for the first time in the trial court by Owners Management in its posttrial brief. Therefore, we find the trial court did not err in refusing to consider Owners Management's arguments as to the violation of this statute. Nor will this court consider this issue on appeal. ·

■ Second, Owners Management argues that Doris Moore and Al Moore should be evicted for breaching the terms of the lease agreement. Paragraph 13b provides that the "tenant" agrees not to "use the unit for unlawful purposes." Paragraph 13c provides that the "tenant" agrees not to "engage in or permit unlawful activities in the unit, in the common areas or on the project grounds." As discussed under the first assignment of error, Al Moore was not a tenant under the May 2, 1990 lease agreement and therefore could not have breached the lease.

Owners Management concedes that Doris Moore herself was not involved in any unlawful activity. However, Owners Management does argue that Doris Moore permitted her son Al Moore to engage in drug trafficking in the apartment.

At all relevant times, Doris Moore was disabled and confined to her bed, and she seldom left the apartment. Because of her disability, her bed was moved to the living room on the first floor of the apartment. Doris Moore testified that she did not know that her son was selling drugs and did not permit her son to sell drugs.

Detective Katafiasz's testimony was only that Al Moore sold drugs in the hallway, on the premises or in the parking lot of the apartment complex. The only evidence that Doris Moore was ever in a position to physically observe her son's activities was testimony that one of the confidential informants had told police he saw the inside of the Moore apartment and observed Doris Moore in bed. However, there was no evidence that Doris Moore saw the confidential informant. Therefore, we hold the trial court's finding that Doris Moore did not know of, much less permit, her son to sell drugs was not against the manifest weight of the evidence.

Owners Management additionally argues that the court in *Owners Mgt. Co. v. Overall* (Nov. 13, 1995), Sylvania M.C. No. 95–CVG–272, unreported, held that where illegal activity occurs in a tenant's apartment, an inference is created that

the tenant is aware of the illegal activity and is able to exercise control over it. The language of the lease agreement in *Overall* prohibited illegal drug activity by *"any member of the Tenant's household,* or a guest or other person under the Tenant's control." (Emphasis added.)

We find *Overall* is distinguishable on a factual basis. The language of the lease agreement in *Overall* is much broader than the language of the May 2, 1990 lease agreement in the present case.[1] There is no prohibition against illegal activity by a member of the tenant's household in the May 2, 1990 lease agreement signed by Doris Moore. Therefore, we find the trial court's judgment that Doris Moore did not breach Paragraphs 13b and 13c of the lease agreement was not against the manifest weight of the evidence. See *Seasons Coal, supra.* Accordingly, the third assignment of error is found not well taken.

As the fourth assignment of error, Owners Management argues that the trial court erred in deciding that the notice of termination, as to Al Moore, did not include sufficiently specific grounds for eviction. In that under the first assignment of error we determined that Al Moore was not a tenant to the lease agreement, any error in the notice of termination as to him need not be addressed. Accordingly, the fourth assignment of error is found not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. It is ordered that appellant pay the costs of this appeal as provided for under App.R. 24.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., HANDWORK and GLASSER, JJ., concur.

————

1. It is interesting to note that a subsequent lease agreement, for rental of the apartment from May 1, 1994 through April 30, 1995, was signed by both Al Moore and Doris Moore. This May 1, 1994 agreement *does* contain language which prohibits "any member of the Tenant's household, or a guest or other person under the Tenant's control" from engaging in drug-related criminal activity. However, the May 1, 1994 lease agreement, because it covers a period of time after the March 31, 1994 sale of drugs by Al Moore, is inapplicable to the present case.